UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CHARLES HICKMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:06-CV-151 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| LOUIS TURITTO, TIMOTHY F. TURITTO, ) | |
| FIRST TENNESSEE BANK, ) | |
| BLAZER FINANCIAL SERVICES, INC., ) | |
| FIRST STATE BANK, ) | |
| UNITED STATES OF AMERICA, ) | |
| 5842 PARK DRIVE, HAMILTON COUNTY ) | |
| TN AND ALL PERSONS WHO CLAIM ) | |
| AN INTEREST IN PROPERTY LOCATED ) | |
| AT THE ABOVE ADDRESS, ) | |
| ) | |
| Defendants. ) | |

## **M E M O R A N D U M**

Before the Court is Charles Hickman's ("Plaintiff's") motion for summary judgment (Court File No. 22.) Defendant Timothy F. Turitto ("Defendant") filed a response Court File No. 27). No other defendant filed a response. For the reasons set out below this motion will be **GRANTED**.

**I.      FACTS**

Plaintiff filed a complaint against defendant Louis Turitto, M.D. ("Dr. Turitto") for medical malpractice on July 6, 2004 (Court File No. 1) in state court in Arkansas. After Plaintiff filed the Arkansas law suit, Dr. Turitto transferred his interest by quitclaim deed in property located at 5842 Park Drive in Hixson[1], Tennessee on or about October 7, 2004 to his son defendant Timothy Turitto ("Defendant")  (Court File No. 51 ¶ 5). On January 26, 2006 Plaintiff obtained a judgment against

---

[1]The Court notes Plaintiff erroneously spelled Hixson as Hixon in his complaint (Court File No. 1 ¶ 5).  Plaintiff is ordered to amend his complaint within ten days.

Dr. Turitto in the Circuit Court of Pulaski County, Arkansas, Sixth Division (Court File No. 61, Exhibit 1).

On July 10, 2007 Plaintiff filed suit in this court seeking to set aside as fraudulent this transfer (Court File No. 1 ¶ 15). Defendant Dr. Turitto did not file an answer or otherwise participate in this lawsuit. Accordingly, on April 18, 2007 the Clerk entered a default against Dr. Turitto (Court File No. 45).

The present action was filed to set aside the transfer of 5842 Park Drive and subject Dr. Turitto's property to execution of a foreign judgment (Court File No. 48 ¶ 15). The following is a list of those facts which are not contested and relevant to the disposition of this motion.

Defendant has answered but does not dispute in any relevant fashion Plaintiff's claims. Nor has Defendant offered any facts of has own that has any bearing upon this litigation. For the purpose of this motion Defendant may not rest on allegations of the pleadings but instead must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In opposing such a motion, Defendant may not rest upon a denial of knowledge in an answer to create a genuine issue of material fact. Defendant does not contest that Plaintiff filed a lawsuit against Dr. Turrito in Pulaski County, Arkansas, on July 6, 2004 (Court File No. 51 ¶ 3) (Defendant without knowledge). Defendant does not dispute the validity of the judgment issued by Pulaski County (Court File No. 51 ¶ 17) (Defendant without knowledge). Defendant does not dispute that the property was transferred to him on or about October 7, 2004 (Court File No. 51 ¶ 5). Nor does Defendant dispute that the property was transferred for less value than it was worth (Court File No. 51 ¶ 6). Defendant does not dispute there was no express consideration for the transfer at issue (Court File No. 22 Exhibit A ¶ 6). Defendant does not dispute that Dr. Turitto is his father (Court

2

File No. 22 Exhibit A ¶ 11). Defendant does not dispute that Dr. Turitto has maintained the residence as his own home even after the transaction (Court File No. 51 ¶ 12).

There are other parties to this law suit that have an interest in the property. Their interests are not affected by this motion. That is, regardless of the Court's action on this motion for summary judgment, the interest of the other parties will remain the same as it is prior to the filing of this motion. The Court in this motion is only being called upon to determine the relative interest of Plaintiff and Defendant.

Discovery in the case has concluded and the parties have all the evidence they will use at trial. (Court File No.18 ¶ 5(f)).

## II. DISCUSSION

### A. Jurisdiction and Governing Law

This Court has jurisdiction under 28 U.S.C. §§ 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000. Because this civil action is in diversity the Court looks to state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Tennessee law controls as the law of the situs of the real estate at issue. Restatement (Second) of the Conflict of Laws § 223 (1971).

### B. Standard of Review

Plaintiff moves for summary judgment under Fed. R. Civ. P. 56(b). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party

must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### C. The Arguments

#### 1. Plaintiff's Motion for Summary Judgment.

Plaintiff moves to set aside as fraudulent the voluntary transfer of 5842 Park Drive, Hixson, Tennessee from Dr. Turitto to his son Defendant (Court File No. 48 at 5-6). Plaintiff argues the transaction is so suspicious as to warrant shifting the burden of proof to Dr. Turitto and Defendant (Court File No. 23 at 2).

Plaintiff relies upon *Nashville Milk Producers, Inc. v. Ivo Alston*, 307 S.W.2d 66 (Tenn. Ct. App. 1957). In *Nashville*, a debtor transferred his herd of cattle to his wife and then she transferred the herd to their son. *Id.* at 67. The court noted several factors in these transactions which cast suspicion upon the transaction. First, the herd remained on the same farm, under the same control

4

and management, after the transfer as before. *Id*. at 69-70. Second, the feed which the creditor had sold the defendants was used to feed the herd of cattle. *Id*. at 70. Third, the defendant was "experiencing considerable financial difficulty." *Id*. Fourth, when faced with specific charges of fraud the defendants, made no explanation or proof. *Id*. Fifth, there was no evidence of consideration supplied for the herd in either of the transfers. Under such circumstances, the court found the law required defendants to provide a response and explanation to dispel suspicion. *Id*. at 72. After the plaintiff showed the existence of the indicia of fraud ("Badges of Fraud") the court shifted the burden of proof to the defendants. *Id*. at 71-72.

### 2. Defendant's Arguments.

Defendant attempts to distinguish this case on the grounds Defendant was not part of a collusive scheme to defraud Dr. Turitto's creditors (Court File No. 27 at 3). All participants in the *Nashville* transaction were part of the scheme to defraud. In the present case, Plaintiff has made no showing of intent to defraud on the part of Defendant, the grantee. Tennessee law does provide a defense when the grantee of a fraudulent transaction takes in good faith, but only to the extent value is given. Tenn. Code Ann. §§ 66-3-309(a) & (d). Defendant admits no consideration was given for the transfer of the property itself (Court File No. 22, Exhibit A ¶ 6). Therefore, Defendant does not gain the protection of this provision even if he had no intent to defraud the creditors of Dr. Turitto.

Defendant argues essential evidence is within the hands of Dr. Turitto and is necessary for decision of this motion (Court File No. 27 at 2). Because Dr. Turitto has had default entered against him in this action the first argument is no longer relevant as a reason to delay judgment, but might indicate a genuine issue of material fact.

### D. Do Badges of Fraud Shift the Burden of Proof?

*Nashville* and cases like it rely on common law "Badges of Fraud." These are the traditional indicia of fraud. These are circumstances so suspicious as to cast doubt on the transaction and require an explanation from the defendant. *E.g. Macon Bank & Trust Co. v. Holland*, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986); *Union Bank v. Chaffin*, 147 S.W.2d 414, 418 (Tenn. Ct. App. 1940); *Bank of Blount County v. Dunn*, 10 Tenn. App. 95, 107 (1929). Plaintiffs often must prove fraud through the use of circumstantial rather than direct evidence. "[F]raud will, in most instances, though never so artfully and secretly contrived, like the snail in its passage, [leave] its slime by which it may be traced." *Floyd v. Goodwin*, 16 Tenn. 484, 490 (1835). Courts have used Badges of Fraud as a tool to detect fraud for over 400 years. Unif. Fraudulent Transfer Act § 4 Comment (5). Badges of Fraud are merely those facts "which would tend to shift the burden of proof, and which if not explained on the ground of innocence, would sustain the charge of fraud." *Bank of Blount County*, 10 Tenn. App. at 107. Because this law seems in conflict with recently enacted provisions of the Tennessee code the Court will briefly explain the origin of the burden shifting scheme and how it became the law in Tennessee as well as the origin of the more recent Tennessee provisions.

The original case which established this burden-shifting scheme is *Twyne's Case*, 76 Eng. Rep. 809, 30 Co. Rep. 80 b (Star Chamber 1601). In *Twyne's Case*, there was a bill of information filed which alleged that Twyne had made a fraudulent gift of goods under 13 Eliz. c. 5 (1570). The Queen's Court of Star Chamber held Badges of Fraud "afford a strong presumption of the transaction being *mala fide*." *Twyne's Case*, 76 Eng. Rep. at 810-11 n. B. In many states at the time of the founding, the "Statute of Elizabeth" was the law which voided fraudulent transactions.

In 1801 the Tennessee legislature enacted what is presently codified as Tenn. Code Ann. §

66-3-101. This section voids all transactions of lands "made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful [suits]" Tenn. Code Ann. § 66-3-101. This is an enactment of the original fraudulent conveyance act contained in the Statute of Elizabeth. 13 Tenn. Juris. *Fraudulent & Voluntary Conveyances* § 4 n.19 (2002). In applying this section, Tennessee courts have followed the traditional common law usage of Badges of Fraud to shift the burden of proof. *Overton v. John H. Holinshade & Co.*, 52 Tenn. 683 (1871). In this, Tennessee followed the common law usage of presumptions to detect fraudulent transfers. *See Callen v. Thompson*, 11 Tenn. 474, 477-78 (1832).

The original Uniform Fraudulent Conveyance Act ("UFCA"), drafted in 1919, codified the better common law decisions on fraudulent conveyances, which largely relied on the Statute of Elizabeth or American versions of that statute. Unif. Fraudulent Transfer Act Prefatory Note. Tennessee enacted a version of the UFCA in 1919. Acts 1919, ch. 125, § 1. The original UFCA left the presumptions and burden shifting schemes of the original common law undisturbed. James Angell McLaughlin, *Application of the Uniform Fraudulent Conveyance Act*, 46 Harv. L. Rev. 404, 426 (1933). The UFCA and the Statute of Elizabeth do not conflict with one another, the UFCA is merely an enactment of decisions interpreting the Statute of Elizabeth. In effect, there was a general statute stating a rule and then a specific statute which had detailed applications of that statute. *Scarborough v. Pickens*, 170 S.W.2d 585, 587 (Tenn. Ct. App. 1942)

The Uniform Fraudulent Transfer Act ("UFTA") replaced the UFCA. The National Conference of Commissioners on Uniform State Laws ("Commissioners") approved and recommended the UFTA for passage by the states in 1984. Unif. Fraudulent Transfer Act Prefatory Note. The statute was drafted with the intent of changing the law to bring it in line with recent

7

changes in bankruptcy, secured transactions, and sales. *Id*.

Tennessee enacted the UFTA on April 23, 2003. *See* 2003 Tenn. Pub. Acts 42. The UFTA has two sections: one section dealing with present and future creditors, and one section dealing with present creditors enacted as Tenn. Code Ann. §§ 66-3-305, 66-3-306. "Creditor" is anyone who has a claim. *Id.* "Claim" includes any right to payment whether it is reduced to judgment or not. *Id.* This definition includes tort claimants wherever there is a right to payment even if that right is contingent on a future event or pending litigation. *See* Unif. Fraudulent Conveyance Act § 1 Comment (3); *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 202-3 (4th Cir. 1988); *In re Jason Pharm., Inc.*, 224 B.R. 315, 319 (D. Md. 1998). However, both prongs of the present creditor section require proof of insolvency of the debtor. Plaintiff has not presented such proof before the Court in this case, thus only § 66-3-305 (for present and future creditors) is relevant. Tenn Code Ann. § 66-3-306.

The UFTA addresses cases of constructive fraud or fraud in law, and also fraud in fact. Constructive fraud or "fraud in law" describes certain transactions where as a matter of law the transaction is deemed fraudulent regardless of the actual intent of the parties. The UFTA's constructive fraud provision requires the plaintiff to prove, at a minimum, both the debtor transferred the asset for unreasonably small consideration and the debtor should have believed that he would become insolvent. Tenn. Code Ann. § 66-3-305(a)(2). Proof of these elements would set the transaction aside, regardless of the actual intent of the debtor. Plaintiff has submitted no evidence to the Court showing Dr. Turitto is insolvent, let alone whether Dr. Turitto should have known he

8

was about to become insolvent[2]. Therefore, any part of Plaintiff's motion dependent upon this prong, or the UTFA section voiding fraudulent transactions for present creditors, must be **DENIED** as there exist material questions of fact upon which Plaintiff's claim rests. It remains to be seen whether Plaintiff may sustain this motion on the section of the UTFA which prohibits transactions which are fraudulent in fact.

"Fraud in fact" or actual fraud requires proof of scienter or intent. The UFTA in this regard includes a list of most of the traditional Badges of Fraud, however "[p]roof of the existence of any one or more of the factors . . . may be relevant evidence . . . but does not create a presumption." Unif. Fraudulent Transfer Act § 4 Comment (5). The intention of the drafters as expressed in the commentary was to eliminate the old common law system of presumptions, instead using them as factors for a fact finder to consider. *Id.*; Peter Alces, *Law of Fraudulent Transactions* § 1:15 (1989).

The touchstone of statutory interpretation is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 514 (Tenn. 2005). A later act of a legislature inconsistent with a previous act impliedly overrules the previous act. *Zickler v. Union Bank & Trust Co.*, 57 S.W. 341, 342 (Tenn. 1900). This is especially true where "the Legislature makes a revision of a particular statute and frames a new statute upon the subject-matter, and from the framework of the Act it is apparent that the Legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded." *Id.* at 343.

---

[2]Plaintiff may show insolvency either through evidence that the sum of the debtor's debts is greater than all of the assets at fair valuation or the debtor is generally not paying his debts as they become due. Tenn. Code Ann. § 66-3-303.

The UFTA was intended by the Commissioners to have a greater scope than the superceded UFCA, subject to the enactment of provisions in the Uniform Commercial Code dealing with fraudulent transfers. Unif. Fraudulent Transfer Act § 1 Comment 2; § 4 Comment 8. The Commissioners drafted the UFTA for the express purpose of restating the law to harmonize the law of fraudulent transfers with recent changes in other areas of the law. However, Simply because the Commissioners intended for the UFTA to eliminate the burden-shifting of the common law Badges of Fraud does not mean that the Tennessee legislature intended to eliminate the common law presumptions. There are two reasons to believe the Tennessee Legislature's intent is in accord with the Commissioners's intent.

First, the language of the act itself indicates that any inference is permissive. In finding actual intent, the statute introduces the list of Badges of Fraud by stating "consideration may be given among other factors , to whether" any of the listed Badges are present. Tenn. Code Ann. § 66-3-305. The use of the terms "consider" and "may" indicate that the fact finder may infer but need not do so, therefore the language of the act itself indicates there is no presumption, rebuttable or otherwise.

The Tennessee Legislature also enacted a section adopting the Commissioner's comments to the UFTA as "evidence of the purposes and policies underlying such sections. . . " for disputes of the proper construction. Tenn. Code Ann. § 66-3-313. Thus, the Tennessee Legislature expressly adopted the comments as a description of their legislative intent.

Second, in enacting a uniform law the Tennessee Legislature evinced the intent of harmonizing their laws with the laws of other states who had previously or will subsequently enact the statute. The Tennessee Legislature enacted the UFTA with little alteration of the substantive

sections.³ The majority of cases which have considered the effect of Badges of Fraud under the UFTA in similar situations have not shifted the burden of proof. *Indianapolis Ind. Aamco Dealers Advert. Pool v. Anderson*, 746 N.E.2d 383, 391 (Ind. Ct. App. 2001) (holding the facts must be taken together to determine how many badges of fraud exist and if together they amount to a pattern from which an inference of fraudulent intent may be drawn); *Bradford v. Bradford*, 993 P.2d 887, 891-92 (Utah Ct. App. 1999) (intent ordinarily a question of fact and may be inferred from indicia or badges of fraud); *Lindholm v. Holtz*, 581 N.E. 2d 860, 863-64 (Ill. Ct. App. 1991) (factors are merely considerations of fraudulent intent on which the fact finder may rely); *Rich v. Rich*, 405 S.E.2d 858, 862-64 (W. Va. 1991) (despite existence of seven badges of fraud remanded for finding on actual intent).

Because many of these cases were decided before Tennessee adopted the UFTA, these cases are less applicable in deciding an issue of law under this statute. Such prior decisions rely on a legislative enactment which has been superceded by the UFTA. Those decisions which shift the burden under the UFTA do so without considering the effect of the UFTA's passage. Those jurisdictions which do consider the effect generally hold that Badges of Fraud, while relevant and important tools to infer intent, do not shift the burden of proof.

Tennessee courts, in interpreting previous sections of the Tennessee Code have held that Badges of Fraud can create a rebuttable presumption. *Nashville Milk Producers, Inc.*, 307 S.W.2d at 70. The UFTA as enacted by the Tennessee Legislature does not permit the burden to shift on the showing of the existence of a Badge or Badges of Fraud. Therefore, passage of the UFTA shows

---

³The UFTA has been a great success as 44 states have enacted it in one form or another. Marsha E. Simms, *Acquisition Financing* 393, 401 (Practicing Law Institute Commercial Law and Practice Course Handbook Series No. 11262, 2007).

an intent by the Tennessee Legislature to end the common law practice of shifting the burden of proof on the showing of the existence of a Badge of Fraud. This Court determines prior cases like *Nashville* to be inapplicable to the present case.

### E.    Application

Plaintiff retains the burden of proof. Plaintiff may still prevail in his motion for summary judgment if Plaintiff can show no genuine issue of material fact. Fed. R Civ. P. 56(c).

Under the UFTA, Plaintiff has shown the existence of four separate Badges of Fraud. First, the debtor, Dr. Turitto, transferred his property to an insider, here his son. Tenn. Code Ann. §§ 66-3-305(b)(1) & 66-3-302(7)(A)(I). Second, Dr. Turitto retained possession and control of the asset. *Id*. Third, Plaintiff instituted a tort action before Dr. Turitto transferred the property. *Id*. Fourth, Dr. Turitto received no consideration at all for the transfer of property. *Id*. Moreover, Plaintiff has demonstrated Dr. Turitto is indebted to Plaintiff and has made no effort to satisfy the indebtedness.

There has been no direct evidence of Dr. Turitto's actual intent. The question is whether this Court may grant a motion for summary judgment where the plaintiff has the burden proof and has demonstrated a very strong circumstantial case, and the Defendant offers no contradictory evidence. Intent can never be directly proven, absent confession, but must instead be inferred from circumstantial evidence. The Badges of Fraud permit, but do not require, the fact finder to infer the existence of intent.

Ordinarily, the Court would not consider it likely a party carrying the burden of proof could prevail on a motion for summary judgment. However, this is not the ordinary case and in this particular case, it is a much closer call. Considering the actions and inactions of Dr. Turitto and the traditional indicia or fraud, the Court concludes no reasonable juror could determine an absence of

an intent to defraud. This is especially so where Defendant offers no explanation. "An adverse party may not rest upon the mere allegations or denials of . . . pleading." Fed. R. Civ. P. 56(e). Defendant does not contest the traditional indicia of fraud. Nor does Defendant contest fraudulent intent on the part of Dr. Turitto, but instead denies knowledge (Court File No. 51, ¶ 5). In this case the jury is not being asked to determine the accuracy of Plaintiff's evidence. It is undisputed. The only evidence that Plaintiff cannot present direct proof on would be Dr. Turitto's state of mind. However, unless Dr. Turitto confessed, there would no way to prove he acted with intent to defraud. But the jury would know Dr. Turitto did not participate in this litigation, has failed to satisfy the state court judgment against him, and has ignored the opportunity to file an answer or otherwise contest the claims presented here. Presented with these facts the question becomes whether any reasonable juror could find Dr. Turitto did not act with fraudulent intent. There is no reason to assume Dr. Turitto will willingly testify as a witness in this case although he is listed as a witness by Plaintiff. Under these circumstances any reasonable juror would find that the transaction was fraudulent absent an explanation.

The Court does "[view] the evidence, including all reasonable inferences, in the light most favorable to the non-movant." *Matsushita Elec. Indus.,* 475 U.S. at 587. Here though, no reasonable juror when faced with this evidence and no explanation whatsoever would conclude that Dr. Turitto did not transfer the property for the purpose of avoiding or defrauding creditors. *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (conclusory self serving statement of defendant not enough to create a genuine issue of material fact under UFTA where several Badges of Fraud proven).

Therefore, Plaintiff's motion for summary judgment will be **GRANTED**. The Court notes,

however that this motion only adjudicates the interest of Plaintiff vis-à-vis Defendant. This ruling does not disturb any other claimed interest in this land, including defendants of the instant suit not named in this memorandum. Properly, all the accompanying order does is void the transaction between Dr. Turitto and Defendant. Plaintiff has secured a default judgment against Dr. Turitto so Plaintiff's interest in 5842 Park Drive is superior to both the interest of Dr. Turitto and the interest of Defendant. Tenn. Code Ann. § 66-3-308.

## III. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiff's motion for summary judgment (Court File No. 22). An Order will enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**